WM. FILENE'S SONS CO. v. WEED et al.

(Circuit Court of Appeals, First Circuit. December 9, 1915.)

No. 1101.

CORPORATIONS ⬥565—RECEIVERS—PROVABLE CLAIMS—CLAIMS ARISING UNDER COVENANTS OF LEASE.

A clause in a lease giving the lessor the right at his election to terminate the lease and re-enter on the bankruptcy or insolvency of the lessee, and also on such election to demand payment from the lessee of a sum based on the length of the unexpired term, and virtually the rental for such term, does not, where the election is exercised after the appointment of a receiver in insolvency for the lessee by a court of equity, make the lessor a creditor entitled to prove his claim against the estate, since by the terms of the covenant the claim had no existence until after the sequestration of the estate for the benefit of existing creditors by the appointment of the receiver and the subsequent election of the lessor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2281, 2282; Dec. Dig. ⬥565.]

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by the Isaac McLean Sons Company against William S. Butler & Co., Incorporated. In the matter of the claim of the Wm. Filene's Sons Company. From an order disallowing such claim, on objections of Charles F. Weed and others, receivers, claimant appeals. Affirmed.

The following is the opinion of DODGE, District Judge:

The receivers filed a petition for instructions regarding this claim April 7, 1913, which was answered by the claimant company April 8, 1913. By an order entered December 15, 1913, the issues raised were referred to a special master, to hear the parties and their evidence and report thereon. The claim is also one of the disputed claims referred to the same special master by a like order also entered December 15, 1913.

Upon the special master's report, filed February 21, 1914, there has now been a hearing. He has found the facts upon which the questions to be decided depend, and there is substantially no dispute regarding his findings. The manner in which his report has presented the facts is so clear and satisfactory that little restatement will be needed, and I shall deal with them largely by reference to the numbered paragraphs of his report.

The claimant's rights are those which belong to it under the lease described in paragraph 2, made by it to the Butler Company May 29, 1912, of the five parcels of real estate which were together occupied and used by the Butler Company as a department store from September 3 to November 7, 1912. The claimant was tenant, not owner, of these parcels, and annexed copies of the leases under which it held them (see paragraph 1) form part of the report, as does its underlease to the Butler Company, whereon it bases its present claim. The term for which this underlease was to run expired, as to each parcel, with the expiration of the claimant's estate as tenant under the lease thereof to it. The leases to it have remained in force throughout, and are still in effect. The earliest date of expiration of any of them was December 30, 1917 (paragraph 2); the latest date is in 1921; so that when all the property and assets of the Butler Company passed into the hands of the receivers in this case by the decree of November 7, 1912, there was a long unexpired term under both leases in the case of each and all the leased properties.

The receivers having on December 5, 1912, declined to adopt the underlease (paragraph 5), the claimant entered and took possession by leave of court on December 9, 1912 (paragraph 6), thus terminating the underlease on that day. The claimant had received the rent due under it to November 1st. It has also been paid by the receivers for their use and occupation from November 7th to December 9th at the same rate. (See paragraph 5.) The receivers concede that the claimant is entitled to prove in these proceedings for rent from November 1st to the time of their appointment on November 7th at the monthly rent agreed in the underlease; also for water rates and insurance proportioned upon the same period—in all, $3,739.48. (Paragraph 8.) They deny that the claimant has any further provable claim.

The claimant contends that the provisions of the underlease quoted in paragraph 9 give to it the right to prove also for all that would have become payable to it, after its re-entry, according to the underlease, during the full term thereof, had there been no receivership or re-entry, less any rentals under new leases or the estimated rental value of premises not relet. I am here describing this part of the claim in general terms only. The items composing it, and its total amount, if calculated in the manner contended for, appear in paragraph 2 of the "summary" with which the report concludes, with references for detailed explanation of the more important items to prior paragraphs of the report.

So far as the claim for anything beyond the amount conceded as above is made up of rent or other payments required of the Butler Company by the underlease, and accruing or to accrue after the claimant's entry in December, 1912, it rests wholly on the Butler Company's covenants, expressed in those provisions of the lease quoted by the master and summarized below, to pay

the lessor, upon such re-entry, for or on account of such after-accruing installments.

These covenants were agreed in the lease to become effective in case the lease should be terminated by such re-entry, and the right so to re-enter was agreed to exist if the lessee should fail to perform. The same right was also agreed to exist if a receiver appointed should stay in over 90 days. The re-entry which has been made was upon a failure of performance caused by the appointment of a receiver; not upon the ground that the receivership had continued 90 days. Failure of performance having given the right to re-enter, and the right having been exercised so as to render the covenant effective, the terms of the covenant purported to give the lessor an election among alternative methods of payment. This election has been made by the presentation of the claim in the form reported by the master.

Whatever the effect of the receivership upon the Butler Company's executory contracts not contained in any lease, it effected no breach of any lease under which that company was tenant, nor did it terminate the company's estate in the premises leased. That it did is not contended in this case. Once it had resulted, however, in a failure of performance in respect to payment of rent, the receivers had lost the right to adopt this lease without the lessor's consent, because such failure gave the lessor a right to re-enter, and so terminate the lease. In re Roth & Appel, 181 Fed. 667, 671, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270. The receivers' election not to adopt, if after such failure, though it may have influenced the lessor as to the time when he would re-enter, seems to be without other bearing upon the question arising.

The order for presentation of claims in this case, under which proof of this claim was first presented to the receivers, was entered November 11, 1912, and it required all creditors to present their claims on or before January 1, 1913, "made up as of November 7, 1912," the date of the filing of the bill and of the receivers' appointment. There have been several extensions of the time thus limited by subsequent orders. The last extension expired December 12, 1913. Obviously there can be no claim as of November 7, 1912, for that which the claimant first got any right to demand on December 9, 1912.

According to the decision of the Circuit Court of Appeals for this circuit in Slocum v. Soliday, 183 Fed. 410, 106 C. C. A. 56, the covenants here relied on gave the lessor no claim provable in bankruptcy for lost rental accruing after its re-entry, had there been bankruptcy on November 7, 1912, instead of this receivership. The covenants relied on in that case were substantially like these, and no circumstances appear sufficient to distinguish the question which would have been here presented from that there decided. The lessor's re-entry was not until after the bankruptcy, and it was held that at the time of the bankruptcy there was only a "contingency that there might be a claim." The same was true here on November 7, 1912. Before December 9, 1912, no claim under the covenants had any existence. It was not merely uncertain as to the amount.

In equity proceedings like these, however, the allowable claims of creditors are not necessarily only those provable as of the date whereon the receivers were appointed. This may be conceded in view of the decision of the Circuit Court of Appeals for the Second Circuit in Penna., etc., Co. v. New York, etc., Co., 198 Fed. 721, 739, 740, 117 C. C. A. 503. Moreover, this claim is being dealt with, not only as presented under the order of November 11, 1912, but also as presented by the receivers' petition for instructions and the claimant's answer thereto. There can be no final order of distribution for some time to come. Although both as to existence and amount the claim was too contingent on November 7, 1912, for allowance as of that date, I must consider it allowable in these proceedings now, if it has since that date become allowable. So far as it will be possible to determine them at all, before final order of distribution, the contingencies which then affected it have now been determined. The lessor has re-entered, and has also made its election, by the claim presented, of the particular method, out of those provided for in the covenant, according to which the amount the lessee was to pay should be ascertained in case of such re-entry.

230 F.—3

The decision last above cited affords no support for the contention that a claim for rent, accruing or to accrue after the receivership, under a lease which the receivers have declined to adopt, whether or not it has been terminated by the lessor's entry, is ordinarily a claim provable against the estate in proceedings like these. No such claim was allowed in that case, and as the opinion points out (198 Fed. 744, 117 C. C. A. 503) there is no analogy between a damage claim for breach of an uncompleted executory contract to furnish transportation services to the insolvent for 20 years (which was allowed), and a claim of damages for loss of unaccrued rent under an unexpired lease. A claim founded on the insolvent railroad's covenant, as lessee, to pay rentals and taxes thereafter to become due from the lessor railroad, was disallowed so far as it related to rentals or taxes becoming due after the lessee's receivers had given up the lease. These, it was held, were too uncertain for allowance; and it was said that "the rule which excludes a demand for future damages for nonpayment of rental excludes them." Page 760, "Crosstown Company's Appeal." See also In re Roth & Appel, 181 Fed. 667, 669, 104 C. C. A. 649, 31 L. R. A. (N. S.) 270; Slocum v. Soliday, 183 Fed. 410, 411, 106 C. C. A. 56.

In the absence of express provisions such as those quoted by the master from this lease, no allowable claim for future payments under it would in any event have come into being upon or after the lessor's re-entry on December 9, 1912. The receivers would have been bound to pay for their use and occupation, but the lessor would have had no further rights against the estate. The question now to be decided is whether the lessee's express undertaking in the lease to make payments on account of such unaccrued rent in the event of such re-entry have given the lessor a claim which ought to be here allowed.

A difference between the parties regarding the interpretation of those terms of the lease which fix the payments to be made by the lessee while its tenancy continued is first to be considered. The somewhat unusual character of those terms is accounted for by the fact that the lessor, instead of being owner of the five parcels making up the premises, was itself tenant of each, and bound to pay rent, taxes, water rates, etc., therefor under each overlease. The Butler Company, according to its underlease, was to yield and pay "as rental" (1) the aggregate of the rentals, etc., due from this claimant under the five leases referred to, "together with" (2) $20,000 yearly, in equal monthly payments until the expiration of the last overlease at the end of February, 1921. There is no occasion to consider the provisions regulating the precise dates upon which installments of the "rental" thus composed were to fall due. The claimant contends the yearly payment of $20,000 is not to be treated as "rent" for the purposes of this case, but as a "bonus," payable in installments, and due, at all events, independently of any tenancy of the premises. The master admitted evidence, against objection, tending to show that both parties so understood the matter in their negotiations before the lease was signed. It does not seem to me that there is any such ambiguity in the terms of the lease as to make such evidence admissible. The whole amount to be paid by the tenant, though made up of both the above elements (1) and (2), is repeatedly referred to in the lease as "rental" or "rent and other payments," and the consequences of failure to meet installments of (2) when due were to be the same as in the case of (1). The substance of the bargain was that this claimant, controlling the five different parcels as a whole, let them for $20,000 a year more than the total annual payments which it had itself to make as tenant, requiring this much of the rent reserved to it by the underlease to be paid at all events. The fact that payments under (2) were not to abate upon certain contingencies mentioned which would abate payments under (1), I consider insufficient to require a different conclusion. My ruling is that the evidence admitted should have been excluded; but even if it is admissible, I do not think it sufficient to show a definite understanding between the parties at the time that the meaning of their agreement should be that for which the claimant now contends. The entire amount of the above payments required from the Butler Company will therefore be hereinafter regarded as rent.

The covenants by the lessee which afford the only basis for the lessor's present claim may be thus summarized:

Upon termination by re-entry, the lessee was to pay $20,000 for each year of the then unexpired term of the underlease on demand, less a discount of 5 per cent. (elsewhere agreed in the lease to be allowed in case the lessor should exercise a privilege reserved to cancel upon a like payment).

Also at the lessor's election, which he might make or change at pleasure, to pay either—

(a) As liquidated damages, sums equal to the rent and other payments called for by the lease at the times therein provided until February, 1921, less the proper proportion of what might have been paid as above on demand.

(b) Or, as damages, the difference between the rental value of the premises when the lessor should exercise its right to elect and the amount of rent and other payments so called for by the lease until February, 1921, less what might have been paid as above on demand.

(The lessor having elected to require payment under (a) to April 1, 1913, and under (b) from and after that date, a third method of payment which it had the option to elect, viz. (c) indemnity against loss of rent and other payments for the unexpired term, taking into account anything paid on demand as above, need not be further mentioned.)

The above covenants may be even more briefly summarized thus: The annual $20,000 payments to be made until 1921 were all to become immediately due and payable, subject to the discount of 5 per cent. Any difference between the rent reserved in the overleases for the whole unexpired term and the rental value of the premises at the time of re-entry was to be paid in addition.

The covenants in question conclude with the following clause:

"The amounts due the lessor from the lessee under the preceding clauses may be proven in bankruptcy, insolvency, or receivership proceedings, or against any assignee or trustee for the benefit of creditors."

It is, of course, obvious that, in bankruptcy, such an agreement as this, between the bankrupt and one creditor, could in no way assist the provability of the claim. Unless provable under the Bankruptcy Act, the bankrupt's consent thus given could not make it provable. It is no less clear that, in the distribution of an insolvent estate in equity, the court can give no effect to such an agreement. The other creditors, who, in bankruptcy, would have a statutory right to the disallowance of the claim, unless provable under the act, have here a right to its disallowance unless its own merits, entirely apart from the clause quoted, equitably entitle it to share upon an equal footing with the claims due other creditors interested in the distribution. This, indeed, the claimant is understood to concede.

That the remaining covenants above summarized, for acceleration of the payment of all future rental, etc., upon termination of the lessee's tenancy because of its default, would be valid as between the lessor and lessee alone, does not seem to be disputed; but it does not follow that, in equity, they are to be regarded as giving the lessor a right, equal in merit with the right of those creditors of the lessee whose claims were fixed liabilities absolutely owing when the court took control of the estate, or, if then contingent, were so only as to their existence, or only as to amount, to share in this distribution for the full amount of all the rent it might have got, had the lessee remained its tenant and continued to pay rent until 1921, less the stipulated credits, although it has taken back and is not to restore that estate in the premises whose enjoyment by the Butler Company was to furnish the entire consideration for such rent.

That no such claim could be allowed to share, were the distribution to be made in bankruptcy, has been already stated. The result that there is any such difference between the two systems of distribution, in the principles according to which the respective merits of competing claims are determined, as will justify the admission of the lessor's claim here because these proceedings are in equity, seems to me one which could only be adopted for convincing reasons, and I am unable to believe that such reasons exist.

The reasons which have been held to forbid the exclusion of claims in proceedings like these, if mature and certain when presented, because they were immature or uncertain in amount on the day when the proceedings were in-

stituted, and to require their allowance if they became mature or their amount certain within a time not involving delay in distribution, do not go far enough to require the allowance of a claim which, like this, had no existence on the date referred to, but has since come into existence through subsequent dealings wholly between the insolvent and the particular creditor, relating wholly to a leasehold interest forming no part of the estate to be distributed, and is dependent not only for its existence, but also as to the time at which it should come into existence and as to its amount, upon election by the creditor while these proceedings were pending. It is not sufficient for the allowance of such a claim to say that it is presented in time, and is not to be excluded because it was not certain at some arbitrary anterior date. It does not seem to me that it is such in its nature as to entitle it to rank with liabilities incurred prior to or concurrently with the receivership, whether then mature or immature, certain or contingent.

If it be said that the dealings referred to were in pursuance of express agreements made and publicly recorded before the institution of these proceedings—so far as these agreements expressly purported to make such a claim provable in case there should be proceedings like these, they are admittedly of no effect here. But the purpose, expressly declared in the clause referred to, of enabling the lessor, at his option, to make all the rent for the entire unexpired term due and provable at once in case of insolvency, is sufficiently obvious without it from the other agreements relied on; default on the lessor's part being far more likely to result from its future insolvency than from any other cause. A liability arising after insolvency out of agreements thus designed to give one creditor an advantage in case of insolvency, which, being for future rent under an unexpired lease, could not otherwise be claimed, I cannot regard as equitably allowable to the prejudice of creditors claiming upon liabilities not so arising. In bankruptcy, such an agreement has been regarded as "a way of contracting for a preference," and providing a mode of thwarting the provisions of the act. In re Merwin & Willoughby Co., 206 Fed. 116, 120.

The above objections to the provability of the claim in these proceedings are in no way avoided, so far as I can see, by the fact that, according to the agreements, the payments called for were to be made as "damages," or "liquidated damages." Notwithstanding the use of these terms, it remains none the less true that acceleration of all the future installments of rent under the lease, irrespective of any tenancy by the lessee, is what was in substance provided for. See Watson v. Merrill, 136 Fed. 359, 361, 69 C. C. A. 185, 69 L. R. A. 719; Bowditch v. Raymond, 146 Mass. 109, 115, 15 N. E. 285.

In view of the above considerations, my conclusion must be that no claim for the accelerated rentals under the agreements referred to is allowable.

That some elements of conjecture or speculation must of necessity enter into any determination, by estimate in advance, of rental values for terms extending so far into the future as these, seems obvious. I am further inclined to agree with the contention of the receivers that, particularly in regard to so much of the installments to be accelerated as above as was to make up the annual payments of $20,000 per year, the agreements relied on resemble in character agreements for a penalty or forfeiture on termination of the lease, rather than agreements for indemnity. Less an agreed discount, payment of the $20,000 per year to the end of the term was required at all events, even in case of reletting by the lessor for more than the overleases required it to pay as tenant. Further reasons are afforded by these considerations against the allowance of such a claim in any respect.

The claim presented by the creditor is allowed in the amount of $3,739.48, admitted as above stated, and is otherwise disallowed. The receivers fail to satisfy me that they are entitled to any set-off against the amount thus allowed on account of the taxes for 1912 paid by the Butler Company on November 1, 1912, according to paragraph 15 of the master's report.

The result reached renders it unnecessary to discuss any of the other questions raised by the report.

George R. Nutter, of Boston, Mass. (Jacob J. Kaplan and Brandeis, Dunbar & Nutter, all of Boston, Mass., on the brief), for appellant.

Frederick H. Nash, of Boston, Mass. (Charles F. Choate, Jr., of Boston, Mass., on the brief), for appellees.

Before PUTNAM and BINGHAM, Circuit Judges, and BROWN, District Judge.

BROWN, District Judge. We all agree that the judgment of the court below should be affirmed, though there is a difference of opinion as to the precise grounds upon which the affirmance should rest. A majority of the court agree with the reasoning of the court below, and adopt its opinion as the opinion of this court.

In view of the argument for the appellant, it may be useful to state certain reasons which seem to support the judgment of the District Court.

The nature of the covenant was explained in Slocum v. Soliday, 183 Fed. 410, 412, 106 C. C. A. 56. It has no operation, except from the time when the lessor entered upon the premises as provided therein. The recording of the lease, with the implied notice to other creditors of its terms, does not assist the appellant. On the contrary, it informed other creditors that, so long as the lease was in effect, either because the lessee had a right to prevent a cancellation, or because the lessor, though having the right to cancel, did not exercise it, any claim under the covenant for indemnity was nonexistent, and did not affect the lessee's solvency.

Other creditors could not have counted the appellant as a creditor for the purpose of showing that the lessee's debts exceeded its assets, or for instituting proceedings in bankruptcy or insolvency, and were entitled to give credit in reliance upon the fact that, so long as the relation of lessor and lessee continued, the lessor could be a creditor only for installments of rent as they fell due. They were also, in giving credit, entitled to rely, not only upon the fact that the claim had no existence, but upon the fact that a debt first arising after bankruptcy proceedings could not share with them in a distribution of assets, and that, so far as the covenant attempted to create a debt to which bankruptcy was a condition precedent, it contravened the bankruptcy laws and was wholly ineffective against them.

Courts of bankruptcy and of equity alike recognize the fundamental equity of equality between creditors, in the distribution of assets, which arises when assets have become insufficient to pay all in full. Both enforce this equity by assuming the control of assets and by stopping, from the time their aid is invoked, the creation of new debts to be paid out of assets. Credit upon the faith of assets is stopped by the filing of a bankruptcy petition or a petition in equity which seeks either primarily or in the alternative a pro rata distribution of assets.

The covenant for payment after bankruptcy or insolvency, upon which appellant now relies, was not, as is contended, entered into upon the faith of the lessee's assets. The lease may have been entered into with more or less consideration of solvency and reliance upon assets,

though insolvency was guarded against by reservation of a right to cancel, but the covenant for indemnity was no part of the lease proper, but a substitutional contract, to take effect, if ever, only after termination of the lease, and only after the realization of a loss. While there was a possibility of its application during the lessee's solvency, we are not in this case concerned with that aspect, but with the covenant as a provision intended to become effective after the lessor had canceled the lease, not for a voluntary breach during the lessee's solvency, but because of bankruptcy, insolvency, or a receivership.

In this aspect the lessor has in substance only a personal promise to pay after personal ability to pay is gone.

Persons doing business with a corporation trust it, not, as the appellant contends, upon the faith of its assets, but upon the faith of an excess of assets over its existing obligations. Knowledge of the amount of indebtedness is as important as knowledge of assets.

Persons were entitled to give credit to the lessee regardless of the mere possibility of a future debt, and if credit was given in ordinary course until their debts exceeded assets, this fact gave rise to an equitable right to distribution among them of the assets upon which they relied for payment, for the enforcement of which they might resort to the bankruptcy court or to a court of equity. This right, after it is once asserted by petition or bill, cannot be impaired or diminished by a debt which did not come into being until the assets were insufficient to pay those creditors who had contracted with the lessee upon the assumption of solvency.

As rent was paid up to the filing of the creditors' bill, the creditors were entitled to assert that no breach occurred by act of the lessee before they asserted their right to the assets. For a breach after this time the lessor must look to the personal responsibility of the lessee at the time of breach. The reason for the rule is the same in bankruptcy and in equity. The claim arises too late.

It is not true that the lessor has a claim for damages for a breach of contract for the entire term of the lease, for it terminated the lease and cut off the future term by its own election. The substitutional covenant, which takes effect after the relation of landlord and tenant is terminated, is what the former lessee has not performed, and upon this rests the appellant's claim. The former lessee has lost its control over its assets, since those creditors who trusted it on the faith of its assets, and with knowledge that the covenant had created no debt, have asserted their right to the assets.

Exactly what was contemplated as one condition precedent to the right of cancellation has happened; custody of the assets for the benefit of creditors who are, as the appellant is not, entitled to say:

"We trusted the lessee upon the assumption of solvency and ability to apply its assets in payment of our claims."

The covenant is inherently weak and insufficient to give a claim to share in assets, for it is a provision for a time when the assets of the lessee are gone from its hands. The lessor, however, still has all that it contracted for in this event—the personal obligation of the lessee.

In substance the covenant is one of indemnity or insurance—a covenant to indemnify the lessor against loss occasioned by the lessee's bankruptcy or insolvency. The lessee insures the lessor for the loss occasioned by the lessee's own inability to pay the agreed rent for the full period.

A claim based upon a promise to pay "after I have become a bankrupt or insolvent the loss occasioned by my bankruptcy" cannot be permitted to share equally with other claims merely on the ground that those who give credit on the faith of assets should be permitted to share in the pro rata distribution of those assets.

This ground upon which the appellant bases its argument for an equitable right to a share in the assets is, however, a good ground for preferring the claims of other creditors. As it is obvious that in framing the provision for bankruptcy or insolvency and for a cancellation of the lease the lessor did not rely upon the lessee's possession of assets to pay with at the time when the debt might arise, this is a sufficient reason for holding that the claim cannot compete equitably with the claims of ordinary creditors.

As a device for the creation of a debt which it is not expected that the lessee can pay, but which, as the lease in terms clearly indicates, is to be used in competition with other prior creditors in sharing assets —as a device to become a creditor ex post facto—it is wholly ineffective.

The claim was rightly disallowed, because the appellant did not become legally or equitably a creditor before other creditors had become entitled, both under the Bankruptcy Act and upon equitable principles to all the assets for pro rata distribution, and because the appellant did not rely upon the assets of the lessee for the performance of the covenant of indemnity, as appears by the covenant itself, which contemplates both the creation and payment of a debt after all the lessee's assets are required to pay prior creditors.

The decree of the District Court is affirmed, and the appellees recover their costs of appeal.

PUTNAM, Circuit Judge. I concur in the result. The District Court applied to this case the rule of Slocum v. Soliday, 183 Fed. 410, 412, 106 C. C. A. 56. I do not know whether the case is governed by this rule or not; but, in the absence of authorities otherwise, I feel bound by it. The application of this case cuts up all the further reasoning contained in this opinion of the court. Therefore I concur that the case is governed by Slocum v. Soliday, and decline to enter into further discussion.