## DICKINSON et al. v. UNIVERSAL SERVICE STATIONS, Inc., et al.

No. 8821.

Circuit Court of Appeals, Ninth Circuit.

Dec. 28, 1938.

754

E. C. Pyle, of Los Angeles, Cal., for appellants.

A. I. McCormick and Guy Richards Crump, both of Los Angeles, Cal., for appellees.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appeal is from an order in an equity receivership suit disallowing a claim and granting a petition of the receiver to pay a dividend.

On March 29, 1933, Universal Service Stations, Inc., a Connecticut corporation, filed in the District Court a complaint alleging a past due indebtedness of the Electric Corporation, defendant (a California concern), in the sum of $32,459.70. The bill alleged that the defendant was indebted to numerous other creditors, had insufficient funds in hand to meet its obligations, and could not raise funds with which to pay them; that it owed unsecured debts in the sum of approximately $57,000 and a secured obligation of $16,000; and that it had assets reasonably worth $138,000, of

which approximately one-third consisted of a stock of merchandise. It was averred that unless a receiver be appointed the assets would have to be liquidated on an unfavorable market and sacrificed, to the very material loss of creditors, but that through receivership its assets could be preserved and by the continuation of the business through the receiver a substantial reduction could be had in its rental, its debts could be paid in full and a substantial part of its business and assets saved for its stockholders.

The defendant and two others of its chief creditors consented to the prayer of the bill. The court appointed the president of the defendant as receiver, giving him broad powers to continue the business. The institution or prosecution of any action against either the defendant or the receiver was enjoined, and the receiver was authorized to affirm or disaffirm contracts or leases.

In 1924 the defendant had entered into a fifteen-year lease with appellants' assignor, whereby it was to pay $2,000 per month as rent. The property involved was a building in Los Angeles. As security for the lease a deposit of $12,000 had been made, returnable in equal annual instalments of $800 upon the condition that the company show an annual net worth in excess of a specified sum. For some time prior to the appointment of the receiver the rentals had been voluntarily reduced, appellants reserving the right to restore them to the full amount at their option. The receiver disaffirmed the lease on May 2, 1933, vacated the premises three weeks later, and thereafter paid no rent. Appellants refused to accept surrender of the premises, but accepted the keys for the purpose of reletting for the account of the lessee.

The court fixed August 1, 1933 as the final date for the filing of claims. The time was later extended to September 10, 1933. During July of this period appellants filed with the receiver a claim for damages for breach of the lease, the damages to be computed by ascertaining the difference between the rent reserved and the value of the use of the premises for the unexpired portion of the term. On October 17, 1933 the receiver rejected the claim, and some thirty days later his action was approved by the court.

On November 25, 1933 appellants petitioned for leave to sue the defendant in the state court for accrued rents due and payable. This petition was heard by the court December 18, 1933, and the leave requested was granted. On January 5, 1934 appellants filed suit against defendant in the state court for accrued rents then due and for such rents as might accrue up to the time of the entry of judgment. The suit was contested, and there were the usual delays growing out of the disposition of demurrers and the amendment of pleadings. The case was ultimately tried, and on May 20, 1935 judgment was entered for appellants for rent then due and payable in the sum of $48,990, with interest from various dates. The defendant appealed to the intermediate appellate court of the state, and counsel for the receiver and for the plaintiff in the receivership suit filed briefs as amici curiae. The judgment was affirmed by the District Court of Appeal on November 15, 1935, Dickinson v. Electric Corp., 10 Cal.App.2d 207, 51 P.2d 205, and the defendant petitioned the Supreme Court of the state to have the cause heard there, in which petition counsel for the receiver and for the plaintiff joined as amici curiae. The Supreme Court denied the petition January 13, 1936. From time to time the receiver had reported the progress of this suit and the measures taken in it.

Meanwhile, on April 26, 1934 the receiver petitioned for leave to declare a 7% dividend on the allowed unsecured claims. The petition referred to the pending action in the state court, and it was asked that appellants be declared to have no right or claim to defendant's assets or to share in the dividend. Objections to this petition were made by appellants and a brief filed. In their objections the appellants asserted that they were prosecuting a suit in the state court and that upon recovery of judgment they would file proof of claim. They asked that, in the event the petition for leave to declare a dividend be allowed, there be impounded their pro rata share against the time when their claim could be presented.

Thereupon the receiver asked that the order of submission of his petition be vacated and a special master appointed. On November 30, 1934 the court vacated the order and named a special master as prayed. On May 31, 1935 appellants filed their claim based on the judgment obtained in the state court. The receiver rejected it. On June 6, 1935 the matter of the proposed dividend came on for hearing before the special master. By stipulation the order appointing the master was then so

amended as to authorize him to pass on the claim.

On February 8, 1937 the special master made his report, recommending that the receiver's petition to pay a dividend be granted and that appellants' claim be disallowed, except as to the amount of $800.[1] The court approved the report, overruling appellants' exceptions, and entered its order disallowing the claim, as recommended, and granting leave to pay the dividend.

Apparently the claim was rejected on the theory that it was one for future rents,[2] other grounds of objection to it being expressly ruled out. On the appeal, however, the discussion has taken a wide range and a number of arguments, other than those assigned by the master, are advanced in support of the order. Without attempting a summary of them we will proceed at once to consider the questions presented.

(a) A preliminary question concerns appellants' first claim and the effect of the order disallowing it.

As already noted, the claim was one for damages, measured by the difference between the rents reserved and the value of the use of the premises for the remainder of the term. We think it was properly subject to rejection for the reason that no remedy in damages was then available to appellants. Wake Development Co. v. Auburn-Fuller Co., 9 Cir., 71 F.2d 702. The California rule is that damages for the lessee's repudiation of a lease are not recoverable until the end of the term. Phillips-Hollman, Inc., v. Peerless Stages, Inc., 210 Cal. 253, 291 P. 178; Treff v. Gulko, 214 Cal. 591, 7 P.2d 697.

In Treff v. Gulko, supra, the Supreme Court of the state said [page 698] "the measure of [the landlord's] damage, it is true, may be the difference between the rent called for by the terms of the lease and the amount received by him upon his reletting the leased premises. The question, however, is, When does this damage accrue? * * * The authorities are clearly to the effect that any action brought prior to the expiration of the term of the original lease is prematurely brought. *The only exception to this rule appears to be that when by express terms of the lease the tenant makes himself responsible for monthly, or other term deficits after the entry of the landlord, then an action will lie to recover these periodical deficits.*" (Italics supplied).

The rejection of the premature claim was not an adjudication of any rights reserved to the lessors under the covenants of the lease. In the suit in the state court (Dickinson v. Electric Corporation, 10 Cal. App.2d 207, 51 P.2d 205) judgment was awarded appellants on the view that there were covenants in the instrument bringing the case within the exception noted in Treff v. Gulko, supra. The action was said to be one for accrued rental, not damages. Said the District Court of Appeal—"We agree with the trial court in the case before us that the covenants of the lease involved are sufficient to provide for continuing liability by the lessee to pay rent after re-entry by the lessor, and that in the present action for accrued rental under the lease respondents are pursuing a remedy specifically given to them by the contract under review." [page 207.]

It is said, though, that the filing of the claim for damages amounted to an election to terminate the lease, hence a claim for rent upon the lease could not thereafter be maintained. The same argument was made and rejected in the suit in the state court, where the illusory nature of the damage claim was pointed out. Dickinson v. Electric Corporation, supra. The significance of the filing and disallowance of the claim, as an election of remedies, was a question of law for determination in the suit on the lease. Riehle v. Margolies, 279

---

[1] The amount allowed was because of credit mistakenly given on rent due for the month ending December 29, 1932. Under the terms of the lease the lessee was entitled to the credit only if its net worth then exceeded $100,000.

[2] Following is the special master's statement of his conclusions:
"At the time the receiver was appointed herein no future rents were due. Rent, while it may be a measure of damages for breach of a lease, is a thing separate from contracts respecting it. As said in Filene's Sons Co. v. Weed, 245 U.S. 597, 38 S.Ct. 211, 213, 62 . L.Ed. 497, 'Rent issues from the land, is not due until the rent day, and is due in respect of the enjoyment of the premises let.' Rents falling due after repudiation of the lease by the receiver herein were not a liability, in esse, either mature or immature at the time the res came into the receiver's hands for administration. Consequently a judgment for such rents while good in personam is not provable against the rem in the hands of the receiver."

U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669; Chicago Title & Trust Co. v. Fox Theatres Corp., 2 Cir., 69 F.2d 60, 91 A.L.R. 991. The judgment in that suit concludes the question.

(b) Appellants contend that their judgment conclusively determined the liability of the debtor's estate, leaving only the question whether requirements as to proof were complied with.

In Riehle v. Margolies, supra, it was settled that a personal judgment against the debtor rendered by a state court after the appointment of a receiver, in a suit commenced prior thereto, is res judicata as to the existence and amount of the debt. It was said that the receivership court, in directing the time and manner of distribution, deals with the property, but that this is not so in the liquidation of claims, whether the adjudication of the debtor's liability is had in the receivership court or in some other court. In Chicago Title & Trust Co. v. Fox Theatres Corp., supra, a judgment was held to have the same effect in a case like the present, where the suit in the state court was not commenced until after the receiver's appointment.

The effect of these decisions is that the judgment is conclusive of the liability, and the merits cannot again be inquired into. However, the holder of such a judgment is not necessarily entitled to prove it as a claim against the estate. Whether he is or not may depend on the origin of the antecedent right and the timeliness of its liquidation.[3]

In an equity receivership, a claim, whether past due, immature, or contingent, is provable "of which the worth or amount can be determined by recognized methods of computation at a time consistent with the expeditious settlement of the estate." Pennsylvania Steel Co. v. New York City R. Co., 2 Cir., 198 F. 721, 739; Wake Development Co. v. Auburn-Fuller Co., supra. But it is generally assumed that the estate is not liable for obligations of the debtor which were contracted after the receiver's appointment. Pennsylvania Steel Co. v. New York City R. Co., supra. Accordingly the receivership court may inquire into the genesis of the judgment for the purpose of determining the time at which the right had its inception.

This is really the crux of the present case. Appellees argue, and the special master seems to have thought, that the right of appellants, antecedent to their judgment, had no existence as of the time the receiver took possession of the debtor's property.

We do not agree with this. The covenant of the lease on which the judgment was grounded was clearly an obligation binding on the lessee at the inception of the receivership. The state court concluded that the lease was not terminated by the re-entry, but that the contract specifically provided for a continuing liability to pay rent. Dickinson v. Electric Corporation, supra.

Appellees cite Manhattan Properties, Inc., v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824, as supporting the proposition that a new contract, distinct from that involved in the original letting, became operative by force of appellants' re-entry after the receiver had rejected the lease. The Manhattan Properties Case was a proceeding in bankruptcy. The court held, among other things, that claims based on covenants of indemnity in a lease were not provable under § 63a of the Bankruptcy Act, 11 U.S.C.A. § 103(a). Two leases there involved were terminated by re-entry after the adjudication, under express options reserved to the lessors. It was thought that, upon the exercise of the options, the indemnity contracts were for the first time initiated.

We think the case is distinguishable on its facts. The lease before us was *not* terminated by the re-entry. Dickinson v. Electric Corporation, supra. In any event, it is clear that the view expressed in the Manhattan Properties Case is not to be accepted as controlling in a receivership suit. Compare the language of the more recent opinion in City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, at page 440, 57 S.Ct. 292, at page 295, 81 L.Ed. 324.[4]

[3] On the question of timeliness of presentation see Riehle v. Margolies, supra, at page 224, 49 S.Ct. 310.

[4] The court there said: "One having a demand against a debtor whose affairs are in the hands of an equity receiver, if the claim matured after the receiver's appointment but before the expiration of the period fixed for presentation of claims, is entitled to prove and to share in distribution [citing William Filene's Sons Co. v. Weed, 245 U.S. 597, 601, 602, 38 S.Ct. 211, 62 L.Ed. 497]; but the rule in bankruptcy has been that the claim under an executory contract must mature at or before the filing of the petition [citing Manhattan Properties Inc. v. Irving Trust Co., supra]."

See also Gerdes on Corporate Reorganizations, Vol. 2, pp. 1113–1114. In William Filene's Sons Co. v. Weed, 245 U.S. 597, 38 S.Ct. 211, 62 L.Ed. 497, and in Gardiner v. William S. Butler & Co., Inc., 245 U. S. 603, 38 S.Ct. 214, 62 L.Ed. 505, damage claims based on lease covenants were held provable in equity receiverships, although the covenants on which the claims were predicated became operative only after the receiver was appointed.[5]

We think the trial court misunderstood the nature of appellants' judgment. It is not one for future rents within the rule applied at common law. It is grounded, rather, in a special covenant in the nature of an agreement to indemnify.[6] Considered apart from the necessity of reducing the claim to dollars and cents at a time consistent with the orderly distribution of the estate, we perceive no important difference, as regards provability, between a claim of this character and one based on a covenant for liquidated damages to accrue at re-entry. William Filene's Sons Co. v. Weed, supra. Both claims have their origin in personal covenants designed to safeguard the lessor against loss arising from repudiation of the lease. Both covenants are enforceable against the tenant under recognized principles of contract law. For present purposes, the chief difference between the two types of claims is in the time of their accrual.

■ There are intimations of something inequitable in allowing a claim of this nature to share on an equality with other claims. However, despite prevalent notions to the contrary, landlords have rights no less urgent than those of other people. Courts of equity possess no authority to sequester the assets of a corporate debtor, whether solvent or insolvent, for the benefit of a particular class of creditors. Pennsylvania Steel Co. v. New York City R. Co., supra, at page 740. As said by Mr. Justice Holmes in William Filene's Sons Co. v. Weed, supra: "When a statutory system is administered the only question for the Courts is what the statutes prescribe. But when the Courts without statute take possession of all the assets of a corporation under a bill like the present and so make it impossible to collect debts except from the Court's hands, they have no warrant for excluding creditors, or for introducing supposed equities other than those determined by the contracts that the debtor was content to make and the creditors to accept. In order to make a distribution possible they must of necessity limit the time for the proof of claims. But they have no authority to give to the filing of the bill the effect of the filing of a petition in bankruptcy so as to exclude any previously made and lawful claim that matures within a reasonable time before distribution can be made."

In the case before us the so-called fund in the receiver's hands comprises the entire business, property and assets of the corporate debtor. The court has undertaken through its receiver to carry on the business for an indefinite time and may ultimately divide the whole of the assets, leaving the debtor an empty shell. In a situation like that it is inadmissible to attempt distinctions between the creditor's remedy in personam and his right to share in the receivership assets.

■ (c) Although it might have declined to do so, Riehle v. Margolies, supra, page 224, 49 S.Ct. 310, the court refrained from ordering any distribution pending the disposition of the suit in the state court. Indeed, aside from the possible payment of a dividend out of current earnings, there seems to have been little urge in the direction of a speedy winding up of the estate.[7] The debtor's business continued to be carried on as usual, at a substantial profit, under the direction of its former president as receiver. The whole course of the proceeding below indicates that a prime purpose of the receivership was to get rid of a burdensome lease.

Under these circumstances we do not regard the so-called bar order as controlling, nor does the trial court appear to have attached any importance to it. There is no intimation that the claim was rejected for any reason having to do with the lateness of its presentation.

■ Orders setting a time within which claims must be presented have been said to be convenient aids to administration, Chicago Title & Trust Co. v. Fox Theatres

---

[5] Compare opinions of the lower courts in the Filene Case, Filene's Sons Co. v. Weed, 1 Cir., 230 F. 31.

[6] See discussions in Gerdes, Corporate Reorganizations, § 687; 46 Harvard Law Review, 1111, 1120–1122.

[7] The record reports the trial judge, as late as September, 1937, as having rejected as "specious" a suggestion of the receiver that, but for the litigation carried on by the appellants, the estate would long since have been wound up.

Corp., 2 Cir., 91 F.2d 907; In re Studebaker-Wulff Rubber Co., D.C.Ohio, 33 F.2d 1004, but they have no statutory sanction and are not given the effect of inflexible rules, independent of their legitimate purpose. It seems to be the usual practice to allow creditors to come in almost as a matter of course where distribution has not been made. Glenn on Liquidation, § 457, p. 463.

Appellants' judgment was presented as a claim in May, 1935. No distribution of the receivership assets, either in whole or in part, had at that time been made or ordered, and the distribution of the dividend, as prayed for by the receiver, was not ordered until nearly two years after the judgment had been obtained and more than a year after it had become final.

The judgment, exclusive of interest awarded by it, should be allowed and appellants permitted to share in the distribution pro rata with other creditors.

Reversed.

