SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

Universal Financial, Wayne Burton, Western Sierra Financial Corporation, California Equities Home Loan, Defendants/Appellees,

v.

Robert HARDY, Nell Agapoff, Richard & Wanda Andersen, Evan G. Beach, Marilyn Benefiel, Paul & Lillian Blazek, Brian Call, Anthony Ciccone, William & Alice Cockell, Karen Costello, et al., Parties in Interest/Appellants.

No. 85–6474.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1986.

Decided Oct. 31, 1986.

Steven Miller, Wyman, Bautzer, Rothman, Kuchel & Silbert, Los Angeles, Cal., for defendants/appellees.

Paul M. Reitler, Timothy B. Taylor, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for parties in interest/appellants.

Before ANDERSON, PREGERSON and REINHARDT, Circuit Judges.

PREGERSON, Circuit Judge:

Appellants ("the Intervenors") appeal from the district court's denial of their motions to file late claims to the assets of an equitable receivership, and their motions to file late objections to the Receiver's categorization of their claims. On appeal, the appellants contend that the district court abused its discretion in denying their motions and entering judgment against them. We affirm.

## BACKGROUND

This case involves a receivership resulting from an action brought by the Securities and Exchange Commission (SEC) against Wayne Burton and various entities he controlled ("the Burton entities"). The SEC asserted that the Burton entities had conducted an elaborate scheme to defraud persons who invested with the Burton entities ("Investors"). The district court appointed an equity receiver, appellee Robert A. Baker ("Receiver"), to take ownership and liquidate the assets of the Burton entities to satisfy the claims of the Investors. Among the properties in possession of the Burton entities when the Receiver was appointed were various promissory notes ("Borrower Notes") secured by trust deeds on real property which represented loans to third parties. Many of the Borrower Notes and trust deeds had been assigned to certain Investors. *See generally SEC v. Universal Financial*, 760 F.2d 1034, 1035-36 (9th Cir.1985) (per curiam).

After his appointment, the Receiver took possession of the Borrower Notes and trust deeds. The district court subsequently adopted a procedure for distributing the assets of the Burton entities. Investors would file claims against the receivership,

and would be placed into one of four categories, which would ultimately determine the extent of the recovery of a particular Investor. This procedure was intended to promote both accurate accounting of the receivership assets and orderly administration of the various claims to the receivership estate.

The procedure for claim filing and categorization was negotiated by counsel for the Receiver and counsel for various Investors. The scheme was approved by the district court, as were all actions taken by the Receiver relevant to this case, after a full hearing with notice to interested parties.

Early in December 1981, pursuant to this procedure, the Receiver sent out a First Notice to Investors ("First Notice") and an Investor's Claim Form ("Claim Form") to all known Investors, including the Intervenors. A separate notice was published in four newspapers in Southern California. These notices provided that any Investors asserting a claim against the receivership had to file a completed Claim Form with the Receiver by March 1, 1982, or the claim would be barred. Additionally, the Receiver sent along with the First Notice a categorization statement ("First Categorization Statement") explaining into which of the four categories the Receiver had tentatively placed a particular Investor. The Claim Form included a section in which an Investor could object to this tentative categorization. The First Notice advised the Investors that, if they did not object, the court could adopt the tentative categorization as final. Finally, the First Notice stated that if an Investor disagreed with the Receiver's tentative categorization, the Investor had to file a properly completed Claim Form stating such objection with the Receiver by March 1, 1982.

After the First Notice, the Intervenors moved the court to extend the deadline for filing Claim Forms from March 1, 1982 to June 1, 1982. The court extended the deadline to March 22, 1982.

In February 1982, the district court approved the Second Notice to Investors ("Second Notice"). The Second Notice was mailed by the Receiver to all known Investors, including the Intervenors, in March 1982. The Second Notice again explained that if an Investor did not object to the tentative categorization by the Receiver, that Investor would be deemed to have accepted such categorization. The Second Notice further stated that if the Investor had objected to the categorization, the categorization would not be considered final. The Second Notice also explained the procedures proposed by the Receiver to resolve disputes concerning the Investor's claims.

In December 1982, the Receiver sent a court-approved Third Notice to all Investors ("Third Notice") and an accompanying "Objection to Categorization" form to all Investors who filed Claim Forms. This Notice included a second tentative categorization of the Investor's claim. The Third Notice stated, *inter alia,* that (1) the district court had approved the categorization procedure, and (2) the court had ruled that any Investors who had not filed the claim by March 22, 1982 had no claim against the receivership estate unless they filed a declaration explaining their failure. The Objection to Categorization form notified each Investor of his or her tentative categorization, and whether the Investor had objected to such categorization. The notice stated that if an Investor objected to the tentative categorization, that Investor had to return a completed Objection to Categorization form to the Receiver by February 1, 1983, or the categorization would become final. Finally, the Third Notice stated that if an Investor had previously objected to the categorization and wished to withdraw the objection, the Investor must notify the Receiver in writing by February 1, 1983.

The Intervenors in this case fall into two groups: the Late Claimants and the Late Objectors. The Late Claimants are those Intervenors who failed to file their Claim Forms by March 22, 1982.[1] The Late Objectors timely filed Claim Forms, but failed

---

**1.** Some Late Claimants also sought to file late objections.

to file Objection to Categorization Forms prior to the February 1, 1983 deadline.[2] In a series of rulings beginning in 1982 and continuing through 1985, the district court held that the Late Claimants were not entitled to file late claims and the Late Objectors were not entitled to file late objections. On November 5, 1985, the district court issued findings of fact and conclusions of law. The court ruled that the various Intervenors had not demonstrated "adequate or sufficient" grounds to allow the filing of late objection forms and late claim forms. The court entered final judgment against all the Intervenors, who timely appealed.

### STANDARD OF REVIEW

We review for abuse of discretion a district court's decisions involving its supervision of an equitable receivership. *See SEC v. Lincoln Thrift Association*, 577 F.2d 600, 606, 608–09 (9th Cir.1978); *accord SEC v. Safety Finance Service, Inc.*, 674 F.2d 368, 372–73 (5th Cir.1982); *SEC v. An-Car Oil Co.*, 604 F.2d 114, 119 (1st Cir.1979).

### ANALYSIS

#### A.  *District Court Supervision of Equity Receiverships*

As we have recognized, case law involving district court administration of an equity receivership (once the receivership is underway) is sparse and is usually limited to the facts of the particular case. *See Lincoln Thrift*, 577 F.2d at 607 & n. 11, 608. Two basic principles emerge, however, from cases involving equitable receiverships, many of which involve SEC–initiated receiverships.

First, a district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. "[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *Lincoln Thrift*, 577 F.2d at 606; *see Safety Finance*, 674 F.2d at 373 (a court overseeing a receivership is accorded "wide discretionary powers" in light of "the concern for orderly administration"). The basis for broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions. In *Lincoln Thrift*, we reviewed a district court's denial of a creditor's motion to appoint additional trustee-receivers or, in the alternative, to appoint a creditor's committee to elect new trustee-receivers. We observed:

> Neither party to this action cites any case which discusses whether this Court has the authority to actively enter the district court proceeding and give specific orders to the district court as to the method of conducting the equity receivership. We have not been any more successful than either of the parties in finding a case in point. It does, however, seem that it would be a cumbersome situation at best were this Court to actively intervene in the operation of the receivership, a position which should be avoided.

*Lincoln Thrift*, 577 F.2d at 608–09. We then concluded:

> [T]his court should not place itself in the position of second guessing a district court judge who had an opportunity to acquire substantial knowledge of the facts and to evaluate the various legal positions after hearing their merits put forth by the various parties, particularly when there appears to be no clear abuse of discretion.

*Id.* at 609; *see An-Car Oil* 604 F.2d at 119 ("We hesitate to second-guess a discretionary decision made by the district court concerning a complicated matter with which it

---

**2.** The Late Objectors actually fit into two categories. One group of Late Objectors failed to object to the Receiver's tentative determination that they be placed in Category 3 and failed to file a second objection to categorization prior to February 1, 1983. The other group objected to the tentative categorization, withdrew such objections before February 1, 1983, and thereafter sought to re-assert their objections.

had intimate working knowledge for more than two years.").

■ Secondly, we have acknowledged that a primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors. *See SEC v. Wencke (Wencke II)*, 783 F.2d 829, 837 n. 9 (9th Cir.1986); *First Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir.), *cert. denied*, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); *accord Safety Finance*, 674 F.2d at 373. Accordingly, we generally uphold reasonable procedures instituted by the district court that serve this purpose.[3]

We reemphasize these basic principles. A district judge supervising an equity receivership faces a myriad of complicated problems in dealing with the various parties and issues involved in administering the receivership. Reasonable adminstrative procedures, crafted to deal with the complex circumstances of each case, will be upheld. A district judge simply cannot effectively and successfully supervise a receivership and protect the interests of its beneficiaries absent broad discretionary power. We would be remiss were we to interfere with a district court's supervision of an equity receivership absent a clear abuse of discretion. Viewed in light of these considerations, the district court did not abuse its discretion in denying Intervenors' motions in the circumstances of this case.

### B. *Late Claimants*

In its November 5, 1985 order, the district court made detailed findings of fact concerning each Intervenor who sought leave to file a late Investor Claim Form. The Late Claimants filed their Claim Forms from three weeks to three years late, and generally asserted that they were confused by the procedure. The district court found that the reasons asserted by each of these late claimants were "not adequate or sufficient" to allow late filing.

The Late Claimants' challenge to the district court's decision not to allow their late filings is essentially two-fold. First, they contend that their failure to file timely claims was reasonable because the notices sent by the Receiver were confusing and the deadlines were too short. Second, they argue that the competing equities involved in these cases favor the Late Claimants. They note that the district court's denial effectively results in a total forfeiture of the Late Claimants' claims. Moreover, they argue that because the Late Claimants stand to recover only $17,000 from a receivership estate worth over $25 million, the impact to other Investors and the prejudice to the receivership is insignificant. They argue that a balancing of these considerations indicates that the district court abused its discretion.

■ At the outset, we find that the notices and deadlines approved by the district court were fair and reasonable. Although the First Notice was detailed, it was not unduly complex, and it clearly stated that any claims to the receivership must be filed on March 1, 1982. The newspaper notices similarly informed Investors of the March 1, 1982 deadline. The two-and-one-half-month period during which the Investors could file Claim Forms was a reasonable length of time to respond to these notices.

■ We also conclude that the district court in denying the applications for late claim filing properly exercised its discretionary authority. The district court's use of reasonably expeditious and efficient procedures to supervise a receivership is within its broad equitable powers.[4] We have

---

3. *See, e.g., Wencke II*, 783 F.2d at 837 n. 9 (district court did not err in requiring a receivership corporation to disgorge some of its shares); *Lincoln Thrift*, 577 F.2d at 609 (district court did not err in refusing to transfer the liquidation proceedings to a bankruptcy court because of the late stage of the receivership proceedings).

4. *See Universal Financial*, 760 F.2d at 1039 (court did not abuse discretion in refusing to require Receiver to post bond sufficient to indemnify creditors for losses resulting from

previously noted that the rights of creditors of a receivership must be balanced against the need for expeditious administration of the receivership; a district court in overseeing a receivership must "make rules which are practicable as well as equitable." *First Empire Bank*, 572 F.2d at 1368. Additionally, we have specifically recognized that "a receiver appointed in the wake of a securities fraud may encounter difficulties sorting out the financial affairs of the defrauded entity." *SEC v. Wencke (Wencke I)*, 622 F.2d 1363, 1373 (9th Cir. 1980) (upholding district court's stay of proceedings against the receivership). Accordingly, the district court's decision to establish deadlines for filing claims, and to bar untimely claims, is reasonable in light of the complexity of the receivership and the procedure employed to notify potential claimants. *See Krause v. Featherston*, 376 F.2d 832, 833–34 (1st Cir.1967) (per curiam) (district court did not err in entering default judgment against claimants who did not file timely claims pursuant to court order); *cf. Wheeling Valley Coal*

*Corp. v. Brady*, 159 F.2d 155, 157 (4th Cir.1947) (same in a bankruptcy case).[5]

Moreover, the record in this case demonstrates that the district judge was not inflexible on the issue of late filing. Upon motion from Intervenor's counsel, he extended the deadline for filing Claim Forms three weeks (from March 1, 1982 to March 22, 1982). More importantly, the court did permit filing of late claims in the vast majority of cases.[6] In ruling on these motions, the court considered the declarations of the Intervenors and heard argument from the Intervenors' counsel. In some cases, the court held hearings to reconsider previous denials; in fact, in at least two cases the district judge granted a Late Claimant's motion after previously denying it. The record thus clearly reveals that the district judge painstakingly considered, and often reconsidered, each request for late filing.[7]

Thus, the March 22, 1982 deadline for filing Claim Forms was reasonable and

---

court ordered stay of proceedings); *An-Car Oil*, 604 F.2d at 119-20 (despite appellants' claim that they may be deprived of an opportunity to assert claims against fraudulent corporation, district court did not abuse its discretion in terminating the receivership and granting leave to file bankruptcy); *Lincoln Thrift*, 577 F.2d at 608-09 (court did not abuse discretion in denying creditors, motion to establish a creditors committee or appoint new trustee-receivers to represent the creditors' interest during liquidation); *SEC v. Arkansas Loan and Thrift Corp.*, 427 F.2d 1171, 1171–72 (8th Cir.1970) (per curiam) (district court did not abuse its discretion in ordering a receiver to settle a claim against an indemnitor of the receivership corporation).

5. Appellants rely on dicta in *Dickinson v. Universal Service Stations*, 100 F.2d 753, 758–59 (9th Cir.1938), suggesting that deadlines for filing claims in an equity receivership should be flexibly applied where the assets have not been distributed. In *Dickinson*, however, the appellant's claim was denied by the district court not because it was untimely, but because the receiver felt that the claim had not arisen before the receivership was instituted. *See id.* at 757–58. Although the creditor's claim was filed after a court-imposed deadline, the *Dickinson* panel expressly stated that "[t]here is no intimation that the claim was rejected for any reason having to do with the lateness of its presentation." *Id.* at 758.

6. The court granted motions in cases where: the Claim Form was sent to the wrong address; an Investor was in a hospital; an Investor's husband was sick; an Investor's Claim Form was received only one day late; an Investor's son was in the hospital; an Investor responded to one claim believing he was responding to all the claims; and an Investor was out of the country; etc.

7. The record demonstrates that the district judge fully considered a number of appropriate factors in deciding whether to grant or deny a motion. At one hearing the judge stated:

There has been an effort to try to be consistent in the granting or denying of some of these claims; some of them do, obviously, fall within the area of credibility.... I have attempted to give as much consideration as I thought possible to those who are making these late claims, and still be consistent with the rights of the other investors.

I have taken into consideration age and infirmity, having some gray area with reference to those that said that they didn't understand or those that thought that the whole legal system was such a hodgepodge that they didn't believe compliance with it was really required.

practicable given the need for efficient and orderly administration of the receivership. Moreover, the district judge actually granted a number of motions for leave to file late claims where the movants demonstrated good cause. Accordingly, the district court did not abuse its discretion in denying the Late Claimants' motions.

### C. *Late Objectors*

The above discussion concerning the district court's discretionary authority applies with equal force to the Late Objectors' contention that the district judge erred in denying their motions to file late objections.[8] Efficient and orderly categorization of Investor claims was needed to determine the extent of the receivership assets and the nature and extent of the Investors' claims to those assets. *Cf. Wencke I*, 622 F.2d at 1373 (upholding stay of proceedings in light of difficulty encountered in determining the financial status of the receivership estate).

■■■ Accordingly, the district court's categorization procedure and deadlines were reasonable in light of the need for categorization of investor claims and the length of time that the Intervenors had to respond. The notices sent by the Receiver were sufficiently clear and gave reasonable notice to the Late Objectors of the categorization scheme, the opportunity to object, and the consequences of failing to meet the objection deadline. Moreover, the district court carefully considered the motions for late filing, held hearings on the motions, and in fact granted the motions in a number of cases.

The Intervenors also object to the district court's use of "summary proceedings" in adopting the categorization procedure and enforcing the objection deadlines. They argue that the First Notice should have been treated as a complaint and the Claim Form as an answer. Analogizing to the Federal Rules of Civil Procedure, they assert that they should have been liberally permitted to amend their "answer."

■■■ We have repeatedly held, however, that the use of summary proceedings to determine appropriate relief in equity receiverships, as opposed to plenary proceedings under the Federal Rules, is within the jurisdictional authority of a district court. *See Wencke II*, 783 F.2d at 836–38; *Universal Finance*, 760 F.2d at 1037; *United States v. Arizona Fuels Corp.*, 739 F.2d 455, 458 (9th Cir.1984). Such procedures "avoid formalities that would slow down the resolution of disputes. This promotes judicial efficiency and reduces litigation costs to the receivership." *Wencke II*, 783 F.2d at 837 n. 9. Specifically, we have noted that "[r]eceivership courts have the general power to use summary procedure in allowing, disallowing, and subordinating claims of creditors." *Arizona Fuels*, 739 F.2d at 458. The procedures used by the district court in this case were a reasonable and practicable attempt to administer the receivership without depriving the creditors of fair notice and a reasonable opportunity to respond. *Cf. Wencke II*, 783 F.2d at 837–38 (use of summary procedures permissible if potential creditors of the receivership are given adequate notice); *Universal Financial*, 760 F.2d at 1037 (same).

Accordingly, the district court did not abuse its discretion in denying the Late Objectors' motions.

### CONCLUSION

The district court's procedure for filing claims and objections was reasonable. The district court did not abuse its discretion in denying the Intervenors' motion for leave to file late claims and late objections.

**AFFIRMED.**

---

**8.** In fact, the Late Objectors' assertions of error are less compelling for two reasons. First, unlike the Late Claimants, the Late Objectors are in a position to receive a portion of the estate, albeit in an undesired category. Second, while the Late Claimants received one notice and had less than three months to file a Claim Form, the Late Objectors were sent three notices concerning the categorization procedures, and the eventual deadline for filing objections to the tentative categorization was more than one year after the First Notice had been sent to the Investors.

REINHARDT, Circuit Judge, concurring and dissenting:

This case arises from the ruins of a series of investment schemes controlled by Wayne Burton (the "Burton entities"). Appellants ("Intervenors") are ordinary individuals who placed their personal funds in trust deed investments arranged through the Burton entities. The investments were not what they appeared to be; the Securities and Exchange Commission brought suit agains the Burton entities, asserting they had carried out an elaborate scheme to defraud its investors.

At the SEC's request, the district court established an equity receivership to prevent dissipation of Investors' assets and appointed appellee as receiver. The receiver established a system of identifying claimants and classifying their claims, which included deadlines for filing claims and for filing objections to their classification. The district judge heard numerous requests for waivers of these filing deadlines, accepting many. Of the late claims, the district judge accepted the vast majority and denied only five. Intervenors are the five late claim filers, and a number of late classification objectors.

The majority affirms the district court's denials of both the motions to file late claims and the motions to file late classification objections, holding the denials did not constitute an abuse of discretion. I disagree with respect to the late claims motions.

The power inherent in the district court to create a receivership in a securities fraud action is an equitable one. *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir.1980). The court exercises this power to achieve a fair and just outcome. In general, such determinations rest well within the discretion of the district court. *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). On review, appellate courts are reluctant to overturn the judgment of the district court absent compelling justification demonstrating abuse of discretion. *Id.* at 609.

Here, I do not question the sincerity and thoroughness of the review performed by the district judge. There is no doubt he did his utmost in trying to be fair to late filing parties. No one could have done a more conscientious job. Moreover, I do not disagree with his, and the majority's, view regarding late objectors. With respect to the five late claim filers, however, I can find no valid reason that supports the denial of their motions. These five Intervenors are all unsophisticated investors—one is 70 years old, disabled and has only a second grade education. My colleagues note that the rights of creditors such as these must be balanced against the need for expeditious administration. Majority op. at 1038–1039. However, there simply are no equities on the side of denial to balance against the unfairness of complete forfeiture suffered by these five Intervenors.

The orderly and efficient administration of an equity receivership is certainly an acceptable reason for denying late filed claims, if that purpose is served and there are no overriding competing considerations. *SEC v. Wencke*, 783 F.2d 829, 837 n. 9 (9th Cir.1986). Here, the late claims were few in number and small in amount. Processing them would not have amounted to an administrative burden. At least four of the five late claims were filed before the deadline for objections to classification of filed claims, a date before which disbursements could not even have been finally computed. Inasmuch as accepting these few late claims could not have required recomputation of the final disbursement formula, let alone have delayed any actual planned disbursements, I fail to see how their acceptance could have affected the "expeditious administration" of the receivership.

Nor would recognition of the five late claims have disadvantaged claimants who filed within the deadlines. The late filers invested $39,200 with the Burton entities, a negligible fraction of the total investment of over $25 million. Of their investments, these five individuals stood to receive back about $17,700. The effect on other claimants of including these claims would have

been infinitesimal. Yet for late filers the effect of barring their claims is stark: they will receive nothing.

The late objectors are in a different position from late filers. Notwithstanding the district court's ruling, the former will receive back at least a portion of their investment, albeit not the amount they would prefer. In addition, their claims are more numerous and involve significantly larger amounts than those of the late filers. The deadline for filing objections was extended twice and was many months later than the deadline for filing claims. Accepting the late objections would have both taxed the district court's time and adversely affected the recoveries of other claimants. This provides ample justification for the denial of the motions of late objectors.

In my view, equity requires that we reverse the ruling of the district court in part, and grant the motions of the five late filing Intervenors. I, therefore, respectfully dissent.