[Civ. No. 10513.   Second Appellate District, Division Two.—November 15, 1935.]

BELLE DICKINSON et al., Respondents, v. THE ELECTRIC CORPORATION (a Corporation), Appellant.

208

Philbrick McCoy for Appellant.

A. J. McCormick and Guy Richards, as *Amici Curiae* on Behalf of Appellant.

E. C. Pyle for Respondents.

GOULD, J., *pro tem.*—Plaintiffs' assignor, as lessor, leased to defendant certain premises for a period of fifteen years ending December 29, 1939, for a gross rental of $360,000 payable in monthly instalments of $2,000 each, which rental was reduced by mutual agreement to $1200 per month for a period commencing April 23, 1932, and continuing until May 29, 1933, when plaintiffs gave notice to defendant that they elected to and did restore the $2,000 per month rate provided in the lease. Defendant corporation, by appropriate proceedings in the United States District Court, was placed in the hands of a receiver March 29, 1933. One of the acts of the receiver, taken pursuant to authority of the federal court, was to disaffirm and repudiate said lease as of May 2, 1933, and thereafter said receiver vacated said premises May 22, 1933, paying to plaintiffs rental for the portion of the month up to the date of abandonment, at the rate of $1200 per month. Plaintiffs thereafter notified defendant by writing dated May 23, 1933, that they would within ten days "re-enter said premises and remove the contents and take possession of said premises, and re-let the same, or any part thereof, at such rental and upon such terms and conditions as they may deem proper, and apply the proceeds thereof, less the expenses, including the regular agent's commission so incurred, upon the amount due from your corporation, and shall hold your corporation for any deficiency". This notice further stated that acceptance of the keys to said premises "shall not operate as a termination of said lease". Plaintiffs further alleged that they had endeavored but had been unable to relet said premises since defendant vacated the same.

Prayer was for three separate items: (1) an alleged shortage of $240 in the rental payment made by the receiver when he abandoned the premises; (2) rental at the rate of $2,000 per month from May 29, 1933, to date of judgment (3) for

the further sum of $800, being a deduction made by the lessee for the month ending December 29, 1932, in accordance with a provision of the lease that such sum might be deducted annually during the term of said lease from an advance "additional security" deposit of $12,000, provided the lessee at the time of such deduction could show a net worth of $100,000, it being alleged that such net worth could not be shown at the date of such deduction.

On the trial plaintiffs prevailed upon all points, including judgment in their favor for twenty-four months rental at $2,000 per month with interest thereon, less a credit of $50 which plaintiffs had received by subletting a portion of said premises for one month subsequent to the commencement of the action. Defendant appeals; and while conceding the binding force of the judgment as to the two items of $240 and $800 respectively, urges that the trial court erred in allowing judgment for rental after surrender of the premises and the reentry of the landlord. The only possible action which plaintiffs might maintain, appellant argues, would be an action for damages for the difference between the rental reserved in the lease and the amount received by the lessor upon a reletting of the premises, and such action would be premature if initiated before the termination of the lease.

▮ The rights of a lessor upon surrender of the demised premises by the lessee prior to the termination of the lease have been defined with exactness by California courts in repeated decisions. If the lessor does not desire to proceed further against the lessee he may accept the surrender, treat the lease as terminated and retake possession of the premises. If, however, the lessor desires to proceed further against the lessee, he has (subject only to the important exception hereinafter noted) a choice of but two remedies: (1) he may rest upon his contract and sue for each instalment of rent as it falls due, or (2) he may take possession of the premises, relet the same and recover from the lessee any damages suffered thereby, the measure of damages being the difference between the amount secured on reletting and the amount provided for in the original lease, in which latter case the landlord may not recover in instalments but must bring his action at the expiration of the original term. (*Treff* v. *Gulko*, 214 Cal. 591 [7 Pac. (2d) 697]; *Phillips-Hollman, Inc.*, v. *Peerless Stages*, 210 Cal. 253 [291 Pac. 178].) Under the first alternative the

action is upon contract for rent; under the second alternative it is not for rent but for damages for breach of contract. ■
The remedies are inconsistent, and ordinarily, as pointed out by the Supreme Court in *Phillips-Hollman, Inc.*, v. *Peerless Stages, supra,* retaking possession of the premises by the landlord and reletting the same amounts to an election of the second remedy listed above.

■ The important exception to the rules laid down above is this: That the lease by its terms may be so drawn as to contain provisions by which the application of the rule may be evaded. This is generally recognized in the California cases above noted and in a long line of New York cases therein cited by the court with approval. Our problem in the instant case resolves itself into a question as to whether the lease involved contains provisions which take it out of the rule.

The action is one for accrued rental and is not brought upon the theory of damages. But appellant argues that because respondents accepted the keys to the premises, retook possession thereof and notified appellant that they would relet the same and apply the rental so received upon the amount due from him, such actions amounted to an acceptance by the respondents of the surrender, and that they were bound thereby and limited to an action for damages. Quite clearly this argument would be conclusive except for the terms of the written lease herein involved. Respondents did exactly what they were permitted to do under the instrument in question, which provided that such repossession and reletting "shall not operate as a termination of this lease unless the lessor so elects, such election to be evidenced by written notice to the lessee"; and it is to be noted that no such notice was ever given by lessors. The pertinent provisions of the lease relied upon by respondents to establish their right to continuing rentals in spite of the repossession and reletting are very similar to those contained in a lease under review in *Kottler* v. *New York Bargain House, Inc.*, 272 N. Y. 28 [150 N. E. 591], in which Mr. Justice Cardozo held that the covenants were sufficient to take the case out of the general rule. The Kottler case is quoted by the California Supreme Court with approval in the Phillips-Hollman opinion, as are other authorities supporting the same principles. We agree with the trial court in the case before us that the covenants of the lease involved are sufficient to provide for continuing liability by the

lessee to pay rent after reentry by the lessor, and that in the present action for accrued rental under the lease respondents are pursuing a remedy specifically given to them by the contract under review.

Before commencing this action respondents filed a "proof of claim" with the federal receiver of defendant corporation, wherein they sought an allowance of a sum equal to the rents for the balance of the term of the lease. This claim was disallowed. Appellant now urges that the filing of such claim for damages for breach of the lease was tantamount to an election to terminate the lease, and that therefore the present action for rent upon the lease cannot be maintained. But the action in filing the claim with the receiver was in fact no election of remedies, for the so-called claim was in truth no claim whatsoever. It was an attempt to assert a right which did not exist; and one asserting such supposed right is not thereby estopped from later pursuing his rightful remedy. (*Agar* v. *Winslow*, 123 Cal. 587 [56 Pac. 422, 69 Am. St. Rep. 84].) Moreover, the claim as filed was against a fund in the hands of the receiver, and it has been held that the filing of such a claim does not debar the enforcement of the personal liability against the party primarily liable. (7 Cor. Jur. 337, sec. 574.)

When the lease in question was executed lessee deposited with lessor the sum of $12,000 "as additional security for the performance by the lessee" of the covenants of the lease. Certain deductions were made from this fund annually, and there remained in the hands of respondents at the time of trial a balance of $5,600. Appellant now claims that in any event this amount should be credited against the judgment rendered. We cannot agree with this contention. The lease itself provides what is to be done with the deposit. It is to be paid back to the lessee under certain conditions at the rate of one-fifteenth of the principal of said deposit in December of each year. There is no provision here, as in the case of *Burke* v. *Norton*, 42 Cal. App. 705 [184 Pac. 45], relied upon by appellant, that the guaranty deposit shall be *applied* on account of damages sustained by breach of the covenants of the lease. Applicable to the instant case is the rule enunciated in *Gallagher* v. *McMann*, 119 Cal. App. 688 [7 Pac. (2d) 204], that the lessor is "entitled to retain the deposit until the complete discharge of the obligation which the same

is intended to secure''. (See, also, *Adjustment Corporation* v. *Marco,* 100 Cal. App. 338 [279 Pac. 1006].) The lease here involved is still in force; it has never been terminated. Until such termination the lessor is entitled to retain the cash deposited with him as additional security for the performance of the covenants of the lease until the discharge of the obligations of the lease, all according to the terms thereof relating to such deposit.

The judgment is affirmed.

Wood, J., and Crail, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 13, 1936.