[Civ. No. 2996.   Fourth Dist.   Dec. 10, 1943.]

COMMERCIAL DISCOUNT COMPANY (a Corporation), Plaintiff and Appellant, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Defendant and Appellant; O. L. COWEN, Cross-Complainant and Appellant.

Rowland M. Butler and Chapman & Chapman for Plaintiff and Appellant.

Louis Ferrari, Edmund Nelson and G. L. Berrey for Defendant and Appellant.

No appearance for Cross-Complainant and Appellant.

BARNARD, P. J.—O. L. Cowen was a Ford dealer at San Bernardino. The Commercial Discount Company had been flooring cars for him under trust agreements. He also owed the Bank of America some $6,000 which is admitted to have been a debt arising out of this business. He had two accounts in this bank, one a general account and the other designated as "O. L. Cowen, Special Account." For brevity, the Commercial Discount Company will be referred to as the company and the Bank of America as the bank.

On January 20, 1937, the bank, under a claim of banker's lien, took all of the general account and $3,347.67 from the special account to cover the balance due to it. Later the same day, the company presented to the bank a check in

its favor drawn by Cowen on the special account and payment thereof was refused. On January 22, 1937, the company brought this action against the bank to recover the amount withheld from the special account, the complaint alleging conversion, with a second count for money had and received. It was and is the company's contention that this special account was a trust fund for its benefit created in connection with its flooring contracts and other agreements with Cowen.

On March 15, 1937, the company entered into a written agreement with Cowen which recited that he owed it about $53,000, referred to various things held by the company as security, and stated that he contemplated selling his business within ten days. It was then provided that he might sell the business if he entered into an escrow therefor within ten days; that the sale should be for cash and for not less than $25,000; that the escrow should be subject to the approval of the company; and that the escrow should provide that claims against Cowen were limited to obligations of the business and not his personal debts. It was then provided that the company "shall" approve all claims prior to payment of the same, that the company "will approve all legitimate, substantiated or legal claims appertaining to the business"; and that the company should file a claim for the balance of the escrow funds after the approved obligations of the business were paid. The agreement then contained elaborate provisions for the operation of the business by Cowen during the period of the escrow, including a limitation on the debts that he might incur without the company's consent, and provided that the term of the escrow should not exceed thirty days.

Cowen sold the business to one Garner and on March 24, 1937, an escrow was started in the bank. Garner placed in escrow $26,000 with instructions to pay the same to Cowen or his order when there could be delivered to him a bill of sale and certain other papers. Cowen put in separate instructions, signed by him alone, directing the bank to pay from the $26,000 the claims of all creditors, other than the company, who should on or before March 24, 1937, present or file claims against him which had been approved in writing by him and the company. The bank was then directed to pay a certain sales tax to the board of equalization, and to pay the balance to the company. Both instructions were directed to the bank generally and not to any department.

On April 1, 1937, the bank, being uncertain whether its offset from the special account was good in view of this action which had been brought by the company to recover that amount, notified its trust officer to hold $3,347.67 out of the escrow funds unless the company should dismiss this action. On April 8, 1937, the escrow was closed and the bank remitted to the company about $9,000, being the balance of the escrow funds except for $3,347.67 which it withheld to await the result of the litigation.

On May 17, 1937, the bank filed an answer and cross-complaint in this action, joining Cowen as a cross-defendant. It alleged the facts in general as above outlined, that it did not know whether its offset against the special account was good or whether it was entitled to apply the amount withheld from the escrow funds to its debt, and prayed for a declaration of its rights and such other and further relief as might be proper. Thereafter, Cowen filed a cross-complaint against the company and the bank, asking that the amount of certain social security taxes due to the California Employment Commission be paid from the escrow funds as one of the debts of the business. Answers to the cross-complaints were filed. At the trial it was stipulated that another action, which had been brought in behalf of the state to collect the social security taxes, be consolidated with this action to the extent of and for the purpose of determining the amount due.

The court made findings and entered a judgment adjudging and decreeing: 1. That the company recover from the bank $3,347.67, with interest from January 20, 1937, covering the amount withheld from the special account; 2. That the company also recover from the bank $3,347.67, with interest, covering the amount withheld from the escrow funds; 3. That it had been agreed between the company and Cowen that the amount of the state social security tax then due should be paid out of the selling price of the business and through the escrow, that these parties omitted to cause these payments to be made through inadvertence and mutual mistake, and that the company pay said tax liability amounting to $2,500.79 to California Employment Commission "out of the balance of funds to be paid to said plaintiff under the provisions of Paragraph 2 of this judgment"; 4. That the bank have judgment against Cowen for $3,347.67, with interest. The bank has appealed from that part of the judg-

ment which is against it, the company has appealed from that part of the judgment ordering it to pay the amount of the social security tax to the California Employment Commission, and Cowen has appealed from the judgment against him. Appellant Cowen has filed no brief.

On its appeal the bank first attacks Paragraph 1 of the judgment to the effect that it may not retain the amount withheld from the special account under a claim of banker's lien. The main contention in this connection is that the evidence is not sufficient to sustain the court's finding that this was a trust fund for the benefit of the company. The evidence on this point is conflicting and while it would have supported a contrary finding it must be held that it is sufficient to support the finding made.

At the oral argument counsel for the bank for the first time raised the point that in the event it is held that it was not entitled under its banker's lien to withhold $3,347.67 from the special account and apply this upon Cowen's debt, it should be held that the company was not entitled to interest on that amount, and that the provision for interest in Paragraph 1 of the judgment should be eliminated. We are unable to agree with this contention. The bank has held this money since January 20, 1937, and if, as found by the court, it was not entitled to withhold the same no good reason appears why the usual rule with respect to interest should not apply.

The bank next contends, as an alternative to its first point, it was entitled to payment of its debt out of the escrow funds, and that the court erred in Paragraph 2 of the judgment in ordering it also to pay to the company a similar amount withheld by it from those funds.

It is conceded that the debt of Cowen to the bank grew out of this automobile business and the court so found. While the bank does not claim both of the amounts withheld its contention is that it is entitled to keep one of these amounts as payment for that debt. When it withheld the first of these amounts under a claim of banker's lien the company brought this action to recover the same. Thereafter, the escrow funds came into the hands of the bank pursuant to an agreement that all of Cowen's business debts should be paid therefrom before the balance should go to the company. While this situation was existing, and while it still retained that part of the escrow funds, the bank filed a cross-complaint in this action, laid the entire situation before the court

and asked for a declaration of its rights and for equitable relief. The company did not sign the escrow instructions, and its claim to any of the escrow funds is based entirely upon its contract of March 15, 1937, with Cowen. In that contract the company agreed to approve all debts arising from the business and that these debts should be paid out of the selling price of the business to be placed in escrow, and that it would file a claim only for the balance after these debts were paid. No sufficient reason is pointed out why the company should not be required to live up to that contract.

The company now claims that in making this contract both it and Cowen assumed that the bank's debt had been paid by the withholding of that amount from the special account under a banker's lien. The company, at least, could hardly have assumed this, as it was then maintaining this action to recover that amount as improperly held, and it has continued to press that claim until it has secured a judgment for a return of that amount. ■ The company also argues that the bank elected its remedy by offsetting the special account and that it could take no other steps to collect this amount. Under the circumstances of this case this was not such an election as precluded the bank from pursuing another remedy for the collection of its debt. (*Dickinson* v. *Electric Corp.*, 10 Cal.App.2d 207 [51 P.2d 205]; *Agar* v. *Winslow*, 123 Cal. 587 [56 P. 422, 69 Am.St.Rep. 84]; *Crittenden* v. *St. Hill*, 34 Cal.App. 107 [166 P. 1016].) Not only did one of these remedies not exist here, as found by the court, but the two remedies were not so inconsistent as to call for the application of the rule relied upon. ■ A further consideration here is that the company entered into a written agreement that all legitimate debts of this business should be paid out of the selling price thereof to be placed in escrow for that purpose. The bank was one of the beneficiaries of that contract. At the time it entered into that contract the company knew of the existence of this debt, its knowledge coming from two sources as shown by the evidence, and it was then maintaining an action to recover the amount improperly withheld from the special account, with the knowledge that this would leave the debt unpaid.

■ The company further contends that the bank's debt was not within the provisions of the contract of March 15, 1937, and that it did not comply with the escrow instructions in that its claim was not filed on time and was not

approved by the company and Cowen. This part of the judgment against the bank is based upon the court's findings to the effect: 1. that the bank's debt was not within the contract of March 15, as that agreement covered only debts to be paid under the escrow instructions, and 2. that the bank's claim was not filed within the time named in the escrow instructions and was not approved by the company. The first of these findings is in no way sustained by the evidence. The contract did not provide that it was to cover only debts to be paid under the escrow instructions. It provided that there should be an escrow in connection with the sale of the business which should provide that claims against Cowen were limited to obligations of this business to the exclusion of Cowen's personal debts. It also provided that the company should approve all claims prior to payment but with the further specific agreement that the company would approve all legitimate claims pertaining to the business. The company clearly agreed that all legitimate debts of this business, including any such debt to the bank, should be paid from the escrow. It knew that by filing this action it had prevented another payment of the bank's claim, at least for the time being. ■ The company cannot take advantage of its own failure or refusal to approve this legitimate debt of the business. The contract contained no limitation as to the time within which bills could be presented except a general provision that the escrow should be closed within thirty days after it was started. Cowen inserted in his escrow instructions a provision authorizing the bank to pay claims of creditors presented on or before March 24, 1937, the very day the escrow was opened. Not only was this an unreasonable limitation of time, one which Cowen was not entitled to make under the contract, and one which was not observed in connection with other claims against this business, but the company's rights are governed by the terms of its contract of March 15 and not by unauthorized changes made by Cowen. Moreover, the escrow instructions were directed to the bank generally and not to any department. The bank not only handled the escrow but then had its own claim in its possession and a formal presentation of the claim to itself would have been an idle act and was unnecessary under these circumstances. In fact, the company, in arguing that "the requirement of the escrow instructions for approval of claims was strictly followed," in another connection and for another purpose, insists that the bank's claim must be consid-

ered as having been actually filed. While it may be true that the company did not specifically approve the bank's claim it had agreed to do so, and it cannot claim the advantages of this contract without accepting the burdens as well. As a practical matter, the company sufficiently approved the bank's claim when, with full knowledge of its existence and amount, it agreed in writing that all legitimate debts of the business should be paid from the proceeds of the sale.

On its appeal from Paragraph 3 of the judgment, requiring it to pay the amount of social security tax due up to the time this business was sold, the company argues that the terms of the contract of March 15, 1937, were unambiguous and did not require it to pay this tax, that oral evidence was inadmissible to prove the intention of the parties in this regard, and that the evidence is not sufficient to support the finding that the parties intended to provide for the payment of this tax as one of the debts of the business and by mutual mistake neglected to so provide in the escrow instructions. It is also argued that this part of the judgment is erroneous since it appears that the company had not approved this claim and since it was not presented before the escrow was closed.

While this point presents some close questions, from a strictly legal point of view they cannot be held controlling in the equity proceeding into which this developed. Through their knowledge of the business the parties to the contract must have known of the general liability for such a tax, and the company's attention was definitely called to such liability since Cowen's statement of his assets and debts was before them when the contract was made. While the parties recognized that this statement had not been brought down to date, that statement sets forth a smaller sum as representing this tax liability at the time it was drawn up, and, without requiring a more complete statement, the company signed the agreement which, in effect, provided that all legitimate debts of the business should be paid out of the proceeds of the sale before the balance should be applied upon the debt to the company. Under its written agreement the company not only agreed that the tax claim should be paid as one of the debts of the business but it agreed to approve the same, and it should not now be allowed to rely on its neglect or refusal to do what it agreed to do. While this claim was not presented before the escrow was closed Cowen testified that a few

days after the escrow was opened he told the company that all of the accounts were in with the exception of the "Social Security and the State tax", that he could not get those in in time to close the escrow, and that the company's agents told him that there was no need to hold the escrow open for that purpose, to go ahead and close the escrow and that those accounts would be paid. The court had the right to accept this testimony as true, although it was denied by the company's agents, and this is sufficient to show a waiver of any requirement for a presentation of these bills or for a specific approval thereof before the escrow was closed. The company received over $9,000 from the escrow which it would not have received, at least in its entirety, but for this new agreement, which discloses a sufficient consideration. ■ The evidence is sufficient to support the essential findings to the effect that the company agreed to pay this tax out of the proceeds of this sale and that this has not been done. Certain other findings are surplusage and whether or not they are fully supported by the evidence is immaterial. There was no mistake in the contract by which the company clearly and definitely agreed to pay this obligation out of the proceeds of the sale. The only possible mistake was one by Cowen in giving incomplete instructions with respect to the escrow. However, both the company's rights and obligations arise from and rest upon the contract itself rather than on the escrow instructions which it did not give or sign, and the company waived any strict compliance with the instructions insofar as this item is concerned.

■ While the first part of Paragraph 3 of the judgment requiring the company to pay the amount of this tax to the Employment Commission is correct, the latter portion thereof, which directs the company to pay this amount "out of the balance of funds to be paid to said plaintiff under the provisions of Paragraph 2 of this judgment," is erroneous since the court erred in Paragraph 2 in ordering the amount withheld from the balance of the escrow funds to be paid to the company by the bank. The quoted portion of Paragraph 2 of the judgment should, therefore, be stricken.

■ Since the bank is entitled to keep the $3,347.67 withheld by it from the escrow funds in payment of its claim against Cowen, and since that debt is thereby discharged, Paragraph 4 of the judgment, which covers this debt and is in favor of the bank as against Cowen, is erroneous and should be stricken.

For the reasons given, Paragraph 1 of the judgment is affirmed. Paragraph 2 of the judgment is reversed, with directions to the trial court to amend that portion of the judgment by providing that the appellant bank may retain the sum of $3,347.67 which it withheld from the escrow funds and apply the same in payment of Cowen's obligation to the bank. Paragraph 3 of the judgment is modified by striking out the last clause thereof, which reads: "out of the balance of funds to be paid to said plaintiff under the provisions of Paragraph 2 of this Judgment," and, as so modified, is affirmed. The judgment is further modified by striking therefrom the whole of Paragraph 4. The appellant bank to recover from the company its costs on this appeal.

Marks, J., and Griffin, J., concurred.