[Civ. No. 22372.   Second Dist., Div. Two.   Feb. 20, 1958.]

PASADENA HUDSON, INC. (a Corporation), Appellant, v. ANGELO MAGGIORA et al., Respondents.

Roland Maxwell, Paul H. Marston and Richard W. Olson for Appellant.

Littlejohn & Callister and E. Talbot Callister for Respondents.

FOX, P. J.—In 1952 plaintiff leased certain property in Pasadena from defendants for a term of 10 years at an annual rental of approximately $14,500. Plaintiff agreed in addition to reimburse defendants for the city and county real property taxes on the premises paid during the term of the lease. A deposit of $11,000 was paid by plaintiff to defendants as security for its performance of its obligations under the lease; defendants agreed to credit plaintiff with interest on this deposit at the rate of 5 per cent per annum. One year and three months after signing the lease plaintiff vacated the premises and ceased paying rent. Defendants gave plaintiff written notice, as required by the lease, of the breach thereof arising from the failure to pay rent due. Plaintiff then advised defendants in writing that it was unable to comply with the lease and expressly requested that defendants attempt to relet for its benefit. Defendants responded with a written notice to plaintiff that they elected to keep the lease in full force and to relet for plaintiff's benefit; they stated further that they would hold plaintiff for any resulting loss or damages, as provided in the lease.

One month thereafter defendants relet the premises to Meadow Gold Dairies for a term of 10 years. The proposed lease was approved by plaintiff prior to its execution. The annual rent under this lease is $16,800; however, defendants are required to pay the annual taxes on the land up to a maximum of $2,881.87. Based upon 1954 and 1955, the net result is that the total yearly rental received under the new lease is less than that designated in the lease with plaintiff; the deficiency has been about $500 per year.

At the end of 1954 defendants submitted an accounting to plaintiff in which the latter was credited with interest on

the security deposit after deducting taxes and other items that defendants had paid. At the end of 1955 defendants again submitted an annual accounting to plaintiff. In this accounting defendants subtracted from the security deposit (1) the amounts which they had paid their attorneys for legal services resulting from plaintiff's breach, and (2) the rental losses they had sustained (taking into account the taxes which were paid by defendants). They then tendered to plaintiff the sum of $387.61, representing the annual interest on the balance, which tender was refused by plaintiff.

Thereafter plaintiff instituted this action for declaratory relief, praying that the rights of the parties under the lease be determined. The trial court held: that the lease executed by plaintiff and defendants was in full force; that defendants are entitled to retain the money deposited with them by plaintiff as security until the expiration of the lease; that plaintiff wrongfully breached the lease; that defendants are entitled, as provided in the lease, to deduct from the security deposit damages and expenses incurred as a result of plaintiff's breach; that plaintiff is not entitled to collect the rent from Meadow Gold Dairies; and that at the expiration of the lease plaintiff is entitled to an accounting from defendants as to the security deposit, and is entitled to any money remaining after deduction of damages and expenses incurred by defendants. Moreover, although the court found that defendants incurred and paid legal expenses and attorneys' fees in the sum of $785 as a result of plaintiff's breach, the court refused to find whether or not the fees were reasonable.

Plaintiff has appealed from the judgment on these grounds: (1) that the court erred in refusing to adjudicate the propriety of the deductions made by defendants from the security deposit; (2) that the court erred in holding that plaintiff is not entitled to any portion of the rents collected under the Meadow Gold lease; and (3) that the court erred in failing to adjudicate defendants' obligation to pay interest.

It should be noted at the outset that neither side questions defendants' right under the lease to take possession of the premises after plaintiff's default and relet them for plaintiff's benefit, thereby keeping the lease in effect. (See *Phillips-Hollman, Inc.* v. *Peerless Stages, Inc.*, 210 Cal. 253 [291 P. 178]; *Dickinson* v. *Electric Corp.*, 10 Cal.App.2d 207 [51 P.2d 205].) The only questions involved on this appeal concern the present obligations of the parties under the lease between them.

■ Plaintiff's first contention relates to the trial court's refusal to determine the reasonableness of the deduction for attorneys' fees. This issue was raised in the pleadings and was squarely before the court. The court found that attorneys' fees in the sum of $785 were incurred by defendants as a proximate result of plaintiff's breach. The court further found that defendants were entitled to deduct *reasonable* fees so incurred. But the court left the reasonableness of the fees incurred to be determined at the time of the final accounting when the lease terminates in 1962. It is clear that the trial court could easily have decided the reasonableness of the attorneys' fees at the same time it was passing upon the other questions relating thereto, and thus could have disposed of that factual problem in its entirety while witnesses were available and the facts were freshly in mind. No good purpose will be served by leaving that determination to be made several years hence. Witnesses who are available now and familiar with the facts may not be available then. In light of the changing economic conditions, it will no doubt be more difficult in 1962 to determine what was a reasonable fee for legal services rendered in 1954 than it would have been at the time of trial in 1956 or even now. Thus the practical aspects of the problem emphasize the importance of its early determination. We conclude, therefore, that the trial court should have determined the amount of *reasonable* attorneys' fees incurred by defendants as a result of plaintiff's breach. This will not, however, require a new trial on all issues because the other questions before the trial court were fully adjudicated.

Our position on the question of attorneys' fees does not mean that plaintiff is entitled to an immediate judicial determination every time defendants make a deduction from the security deposit. Plaintiff may question the propriety of future deductions at the time of the final accounting. Here the questions of attorneys' fees and the reasonableness thereof were before the court in this suit for declaratory relief; their determination at the time of trial was not only a simple matter but also a part of the relief prayed for.

■ Plaintiff's second contention is that it should be permitted each month to collect the rent under the Meadow Gold lease to the extent it exceeds the amount which plaintiff is required to pay under its lease with defendants. Plaintiff argues that defendants are receiving more each month under the Meadow Gold lease than they received under plaintiff's

lease except in the months when defendants are required to pay the taxes on the property. This contention is entirely lacking in merit. It is obvious that defendants' obligation to pay the taxes under the Meadow Gold lease should be pro-rated over the rental periods (i.e., monthly) for the full tax-ing period (i.e., annually) in order to determine whether any deficiency exists between the rent received under the Meadow Gold lease and the rent due under plaintiff's lease. Upon such an analysis it appears that there is a deficiency of more than $40 per month or approximately $500 per year under the new lease. There is nothing in the lease between plaintiff and defendants that would support the contention that plain-tiff is entitled to receive any rent under the new lease which defendants contracted on plaintiff's behalf. In fact, the inference is to the contrary. It is expressly provided that upon plaintiff's breach defendants may relet the premises for the remainder of the term and plaintiff agrees to pay any rental deficiency. It is further provided that defendants may recover such deficiency by deducting the amount thereof from the balance of the security deposit which they hold. It is clear from these provisions that defendants have the right both to collect all rent under the Meadow Gold lease entered into because of plaintiff's default and to deduct any deficiency under the new lease from the security deposit. Plaintiff has no right to receive any rental under the new lease.

Plaintiff's final complaint is that the trial court failed to make a proper determination as to defendants' obligation to pay interest on the security deposit. For purposes of clarification the trial court should have stated the formula for computing interest on the security deposit, but the formula is not what plaintiff suggests. Plaintiff argues that it is en-titled to a credit each year of 5 per cent of $11,000, the total amount of the security deposit. This argument is without merit. The sole purpose of the deposit was to give defendants some security for plaintiff's performance of the covenants in the lease. The lease specifically provides that in the event of default by plaintiff, defendants may apply any or all of the security deposit toward the payment of any damages oc-casioned by the default and any deficiency in the reletting of the premises. Once part of the deposit has been used for such purposes, plaintiff is no longer entitled to receive that portion of the deposit upon termination of the lease since it has been used for plaintiff's benefit. It follows that plaintiff is likewise not entitled to be credited with interest upon that portion of

the deposit which has been used to cure its own default. To hold otherwise would permit plaintiff to profit from its own wrong. Plaintiff is entitled only to be credited with 5 per cent interest on the balance of the security deposit each year after the proper deductions have been made, and the judgment should so state.

The judgment herein is correct so far as it goes. It is, however, deficient in two respects: (1) The court should have determined the reasonable value of the legal services occasiond by plaintiff's default; and (2) the court should have stated the formula to be used in computing interest on the security deposit.

The cause is remanded with directions to the trial court to make a finding as to the reasonable value of the legal services rendered to defendants as a result of plaintiff's default, and to enter a new judgment not inconsistent with the views herein expressed. The total costs on appeal shall be divided equally between the plaintiff and the defendants.

Ashburn, J., and Kincaid, J. pro tem.,* concurred.

On March 6, 1958, the opinion and judgment were modified to read as printed above.

A petition for a rehearing was denied March 12, 1958, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1958.

---

*Assigned by Chairman of Judicial Council.